UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZERIFE HERGAJA,

                  Plaintiff,                    Case No. 05-CV-60086

vs.

                                        HONORABLE JOHN CORBETT O'MEARA
                                        HONORABLE STEVEN D. PEPE

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

_____/

REPORT AND RECOMMENDATION

I.      BACKGROUND

      Zerife Hergaja brought this action under 42 U.S.C. § 405(g) and § 1383(c)(3) to

challenge a final decision of the Commissioner denying her application for Supplemental

Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1382c.

      A. PROCEDURAL HISTORY

      Plaintiff applied for SSI on May 13, 2002, alleging disability beginning on July 1, 1999

(R. 12).  Plaintiff's claim was denied on August 14, 2002, and she filed a timely request for

hearing on September 4, 2002.  Plaintiff failed to appear at her November 12, 2003, hearing but

good cause was found for her failure to appear, and her hearing was rescheduled before

Administrative Law Judge (ALJ) Henry Perez, Jr.  On July 28, 2004, ALJ Perez denied

Plaintiff's application (R. 12 - 15).  On February 23, 2005, the Appeals Council denied

Plaintiff's request for review (R. 4 - 6).

      B. BACKGROUND FACTS

            1. PLAINTIFF'S HEARING TESTIMONY

At her May 14, 2004, hearing, Plaintiff stated[1] that she could not recall her birth date because her "brain won't work right." (R. 185, 186). When her attorney asked her if the listed birth date of December 1, 1947, was correct, Plaintiff said it was. Plaintiff testified that she had no education beyond the seventh grade, could not read or write in English, could not speak or understand English (R. 186). Plaintiff came to the United States in 1999 because of the war (in the Balkans) (R. 187). She was married with no children under the age of 18 and lives with her husband in an apartment.

Plaintiff has never worked. Plaintiff said that her heart palpitates in the heat and when she hears an airplane overhead, causing her entire body to shake and a lot of sweating (R. 187 and 188). Plaintiff's chest, left arm and mid-back hurt; she gets dizzy after standing for 10 or 20 minutes; she can walk for 20 to 30 minutes before being exhausted; her stomach hurts when she walks; she also has pain in her side; and her hands go numb (R. 188 - 190). Plaintiff stated that she sometimes loses consciousness, has problems understanding and is forgetful. She says she has become stupefied because she has seen people killed (R. 188). Plaintiff cannot eat some foods because she suffers from heartburn (R. 194). Plaintiff can only sit for 30 minutes before her leg hurts and she needs to lie down. Plaintiff cannot lift anything (R. 195).

Plaintiff testified that she generally wakes up at 8:00 am and is able to dress herself and clean her room (R. 190, 191). Plaintiff's daughter-in-law cooks for her and helps her with the laundry. Plaintiff sits in the breeze on the balcony until it gets too hot, and will then sit inside and watch television (R. 191 - 192). She leaves her home to visit others about once a month (R. 193).

---

[1] Emmy Jujunga served as an interpretor for Ms. Hergaja (R. 185).

2

Plaintiff testified that the reason why she has not been seen by doctors since 2002 is that she cannot afford to have check ups (R. 190).

### 2. MEDICAL EVIDENCE

Plaintiff was seen by Dr. Sandor Shoichet during a two day stay at William Beaumont Hospital from May 7, 2002, to May 9, 2002, after being sent from the Acute Care Clinic with complaints of severe epigastric pain and unstable angina (R. 90). Plaintiff's chief complaint was chest pain that radiated to the back (and sometimes to the left shoulder causing left hand numbness). Her son informed Dr. Shoichet that she had complained for several months of epigastric and substernal pressure associated with increased activity and relieved by rest. Plaintiff also complained of shortness of breath but denied nausea, vomiting or diaphoresis (R. 96, 106). Plaintiff underwent an MPI stress test which was negative. She was started on Protonix and Lopressor (for hypertension and the lowering of the heart rate) in addition to her taking heparin and asprin (R. 91, 108). A cardiac cause[2] of epigastric pain was ruled out and Plaintiff was advised to go to her Internal Medicine Doctor and was scheduled for an appointment with the GI Clinic for July 25 (R. 91). Dr. Shoichet's impression was chest pain with characteristics of unstable angina. He noted that the patient's inability to communicate in English made diagnosis difficult. Dr. Shoichet noted: "There are some features of her discomfort that might suggest a gastrointestinal etiology, however, the radiation of her pain to the left shoulder and to her hand makes me concerned that this is an anginal episode" (R. 97).[3]

---

[2] A May 7, 2002, AP view of the chest showed that Plaintiff's heart and lungs and bony thorax were unremarkable (R. 107).

[3] Plaintiff had a modified exercise test that was negative for inducible ischemia at the submaximal level of exercised achieved. Plaintiff's level of fitness was below average (R. 102).

Upon discharge, Dr. Shoichet diagnosed Plaintiff with abdominal pain (R. 90).

On May 10, 2002, Plaintiff saw Dr. Andrew M. Hauser for a cardiology consultation.  Dr. Hauser described the patient as being "alert, awake, in no acute distress, mildly obese" (R. 145, 146).  Dr. Hauser found the heart to have a regular rate and rhythm with no murmur.  His assessment was: Chest pain/epigastric pain, atypical for cardiac pain, suspect gastrointestinal cause" (R. 146).

A May 31, 2002, CT scan of the abdomen and pelvis showed clear lower lung bases; normal liver, spleen, pancreas and adrenal glands; kidneys are symmetrically perfused with no indication of obstruction or solid mass lesion but a 5 mm cortical cyst in the left kidney; the abdominal aorta has a normal caliber; uterus is normal and there is no indication of adnexal mass; no abnormal fluid collection in the pelvis; and soft tissue and bones are unremarkable (R. 144).  On June 24, 2002, an X-ray of Plaintiff's Lumbar spine showed mild-to-moderate degenerative changes of the facet joints in the lower lumbar spine (R. 143).  Plaintiff had a follow up with Dr. R. Stewart Robertson on July 22, 2002.  Dr. Robertson's assessment was non-specific abdominal and back pain appearing to be musculoskeletal.  Dr. Robertson recommended moist heat and Extra Strength Tylenol.  Dr. Robertson also noted elevated blood pressure and that the patient should continue on Lopressor (R. 176 - 178).

Plaintiff visited Dr. Alexander Stojanovic at William Beaumont Hospital's Gastroenterology clinic on July 26, 2002.  Plaintiff reported pain over her entire abdomen which was worse with movement and was relieved by lying down, rest and eating.  Plaintiff said she had 10 loose stool movements per day without blood and had no recent nausea or vomiting.  Plaintiff reported improvement in her symptoms since beginning the medication (R. 171).  Dr.

Stojanovic's impression was abdominal pain, chronic diarrhea and microcytic anemia (R. 172).[4]

On August 2, 2002, Plaintiff saw Dr. Obri, an internist, for an evaluation (R. 152, 153). Plaintiff complained of fatigue, headaches and blurred vision. After running multiple tests, Dr. Obri concluded that the Plaintiff suffered from: Hypertension, Gastroesophageal reflux disease and atypical chest pain, most likely secondary acid reflux disease (Id.).

An August 13, 2002, colonoscopy revealed small internal hemorrhoids but no thrombosis or bleeding. Except for the hemorrhoids, Dr. Gregg Polidori stated that the colonoscopy was "otherwise quite unremarkable" (R. 167, 168). Also on August 13, Dr. Polidori performed an esophagogastroduodenoscopy. Dr. Polidori's impression was a small hiatal hernia, otherwise unremarkable (R. 169, 170).

On September 17, 2002, a small bowel study was conducted because of Plaintiff's experiences with pain. The study showed no abnormalities and the upper GI tract and small bowel were normal (R. 166).

On December 5, 2002, an x-ray of the cervical spine (that was taken as an addendum to the cervical spine x-ray performed on November 19, 2002[5]) showed neural foraminal narrowing

---

[4] Dr. Stojanovic's impression:
1. Abdominal pain. This is of unclear etiology and work up thus far has revealed no explanation. Liver Biocheistries and pancreatic enzymes have been normal. She has experienced relief with proton pump inhibitor therapy making an acid peptic disorder a definite possibility. 2. Chronic diarrhea. This is of uncertain etiology and infectious cause is a possibility, although less likely given the chronicity. Other possibilities include irritable bowel syndrome or inflammatory bowel disease. 3. Microcytic anemia. (R. 172).

[5] The November 19, 2002, x-ray showed mild degenerative changes of the cervical spine and a "somewhat limited evaluation of the left neural foramina," requiring the follow up evaluation on December 5, 2002 (R. 165).

on the left side at C4-5, C5-6 and C5-7 (R. 164).

### 3. VOCATIONAL EVIDENCE

Lawrence Zatkin served as the Vocational Expert ("VE") and testified that Plaintiff would be categorized as approaching the advanced age category; is functionally illiterate in English; and has no past relevant work experience. (R. 196 - 197).

ALJ Perez set out a hypothetical with the Plaintiff having the same age, education and work experience with no limitations regarding lifting and a limitation of only being able to learn the job through simple demonstration.  VE Zatkin testified that there would be some work in the unskilled heavy exertional category where she would have to lift 100 pounds occasionally and 50 pounds frequently (R. 197).  ALJ Perez asked if there were any available jobs if the jobs required less lifting.  VE Zatkin testified that there were factory type jobs available: 50,000 jobs at the medium exertional level and 20,000 jobs at the light exertional level in the state of Michigan (R. 198).  There would also be housekeeping or cleaning jobs: 1,500 jobs at the medium level and more than 7,500 at the light level in the state of Michigan.  The VE said that if the Plaintiff cannot lift anything, as she testifies, there would be no jobs available and that inertia, back pain and fatigue make it even less likely that there would be any work that she could do (R. 199).

### 5. THE ALJ'S DECISION

ALJ Perez found that Plaintiff had not engaged in substantial gainful activity since the disability onset date, and that the Plaintiff suffers from the following medically determinative conditions: "hypertension, controlled by medication; a small hiatal hernia; gastroesophageal disease, controlled with medication; and minimal degenerative disc disease of the cervical spine and lumbar spine" (R. 14).  ALJ Perez determined that these impairments do not result in

6

functional limitations and are therefore not severe (Id.).

ALJ Perez also found Plaintiff's allegations of her limitations to be not credible (Id.).

Therefore, ALJ Perez determined that the Plaintiff is not disabled within the meaning of the Social Security Act: "Based on the Title XVI application filed on May 13, 2002, Claimant has not been disabled within the meaning of the Social Security Act at any time through the date of this decision (R. 14, 15).

## II.   ANALYSIS

### A. STANDARDS OF REVIEW

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence.  See 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

### B. FACTUAL ANALYSIS

Plaintiff raises two challenges to the Commissioner's decision: (1) there is no evidence to support ALJ Perez's conclusion that her impairment is non-severe; (2) ALJ Perez should have ordered a full psychological development based on the evidence.

7

(1) <u>Non-severe finding</u>

While it is rare that Courts uphold cases involving non-severe findings at step 2 of the sequential evaluation particularly because the impairments must be considered in combination. Yet, it can be done if evidence clearly establishes only slight abnormality that has no more than a minimal effect on individual's ability to work.

Here ALJ Perez noted the many normal and near normal findings in the medical record (R.13) and concluded Plaintiff's "medically  determinable conditions do not result in functional limitations." (*Id.*)  Thus he found them non-severe.

20 C.F.R. § 416.920 notes:

(c) *You must have a severe impairment.* If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 416.921 defines an impairment that is not severe:

(a)  *Non-severe impairment*(s).   An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.

(b)     *Basic work activities*.   When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs.  Examples of these include--

   (1)    Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
   (2)    Capacities for seeing, hearing, and speaking;
   (3)    Understanding, carrying out, and remembering simple instructions;
   (4)    Use of judgment;
     (5)    Responding appropriately to supervision,  co-workers and usual work situations; and
       (6)    Dealing with changes in a routine work setting.

8

The Sixth Circuit has clarified that:

> an impairment can be considered as not severe, and the application rejected at the second stage of the sequential evaluation process, only if the impairment is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience."

*Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir. 1985) (quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)).

This is consistent with the concurring opinion of Justices O'Connor and Stevens in *Bowen v. Yuckert,* 482 U.S. 137, 158 (1987) that "[o]nly those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits [at step 2] without undertaking this vocational analysis." *Id*.

Plaintiff argues that there is no evidence to support Judge Perez's conclusion that Plaintiff's impairment is not severe. While dealing with the pain symptom, the Sixth Circuit in *Duncan v. Secretary of Health & Human Services*, 801 F.2d 847, 85 (6th Cir. 1986), stated the standard for evaluation of any claimed symptoms in light of the medical evidence:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
> (Id.)

Judge Perez's decision makes it clear that he examined the limited medical evidence provided in arriving at his conclusion that the limited medical findings of any of Plaintiff's conditions did not result in any functional limitation. This took into account those conditions that were managed with medication such as Plaintiff's hypertension. If the medically supported

9

conditions did not affect function, then they would not singly or in combination be severe under the regulations.

A review of the record – with its numerous normal and near-normal findings – demonstrates that ALJ Perez's opinion is supported by substantial evidence and should be upheld.  *See Studaway v. Sec'y of HHS*, 815 F.2d 1074 (6th Cir. 1987).  ALJ Perez's weighing of the evidence was within his broad discretion as fact finder.

Additionally, ALJ Perez found Plaintiff's statements regarding her physical limitations to be not credible.[6]  The regulations provide that the ALJ making a credibility determination must consider the objective medical evidence as well as other factors, such as precipitating and aggravating factors, and daily activities.  20 C.F.R. § 404.1529 (c)(2), (c)(3).  An ALJ may consider factors such as statements by a claimant's various physicians; a claimant's own statements throughout the administrative process and the consistency of those statements with the other record evidence; a claimant's use of medication and the side effects of those medications; a claimant's daily activities; and a claimant's course and history of treatment, in addition to a claimant's demeanor/appearance at the hearing.  20 C.F.R. § 404.1529(c)(2)-(c)(3).

_____

[6] ALJ Perez noted in his decision:
> Claimant testified that she spends her day sitting on the balcony, watching television, and lying down.  Her previous statements of record indicate that she shopped, cooked, washed dishes, did the laundry, cared for her personal needs, and watched her grandchildren (Exhibit 6D).
>
> After reviewing the evidence of record and considering Claimant's statements of record and testimony, it is concluded that her subjective complaints are not credible nor are they consistent with the medical evidence.

(R. 14).

10

When the ALJ's credibility finding is adequately explained, it is entitled to deference.  *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"); *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Williamson v. Secretary of HHS*, 796 F.2d 146, 150 (6th Cir. 1986); *Beavers v. Secretary*, 577 F.2d 383, 386 (6th Cir. 1978).

This Court's "review is limited to determining whether there is substantial evidence in the record to support the findings." *Duncan. supra,*  801 F.2d at 851.  In addition, it is for the Secretary to resolve conflicts in the evidence and to decide questions of credibility. *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).  The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion and substantial evidence standard presupposes that there is a "zone of choice" within which the Secretary may proceed without interference from the courts. *Mullen*, 800 F.2d at 545.

(2.) Plaintiff's psychological claims

Plaintiff argues that the case should be remanded for a full psychological development because the ALJ failed to order a full psychological development.  Plaintiff argues that ALJ Perez failed to fulfill the requirements of SSR 97-7p, which reads, in relevant part:

> The adjudicator must develop evidence regarding the possibility of a medically determinable mental impairment when the record contains information to suggest that such an impairment exists, and the individual alleges pain or other symptoms, but the medical signs and laboratory findings do not substantiate any physical impairment(s) capable of producing the pain or other symptoms.

SSR 96-7p, at n.3.

While ALJ Perez made adequate findings regarding Plaintiff's claims of physical

11

limitations, his decision makes little to no mention of her psychological condition.  Given her language limitations, this is understandable.  Nonetheless, the record suggests that Plaintiff may be suffering from Post Traumatic Stress Disorder or some other mental impairment that would be severe under the Commissioner's regulations.  During her testimony Plaintiff testified that her wartime experience in the Balkans had left her anxious, scared and "stupified."[7]  This testimony, coupled with the fact that the medical record showed confusion over Plaintiff's medical impairments and that no doctor was able to find physical impairments that explained or were capable of producing all of her pain and impairments, suggests that Plaintiff may suffer from a medically determinable mental impairment.  ALJ Perez did not develop the possibility of a medically determinable mental impairment nor did he undertake a suitable and sufficient analysis to reject Plaintiff's credibility concerning her mental limitations.  Therefore, this matter should be remanded for suitable findings concerning Plaintiff's claimed mental limitations possibly including a full psychological evaluation.

---

[7] Plaintiff's following statements, from her testimony, indicate the strong possibility of mental impairments as a result of her experience living in the wartime Balkans:

I'm not good at all.  My heart palpitates and then in the heat I cannot get out, and I cannot even stand on my feet.  **And if I hear an airplane going by, then my heart palpitates hard**.
(R. 187) (emphasis added).

And also, my head is not right because sometimes I lose my consciousness.  My understanding of things.  **And also I get forgetful, and the war has stupified us.  Because of the war we feel stupified because we have seen people killed.  We have tread over dead bodies.**
(R. 188) (emphasis added).

I feel lost.  I feel like I don't know what I speak.  I don't know what I speak.  Because of the war, we have gotten stupidized (sic).  We have gone through so much that my heart and my soul aches.
(R. 194) (emphasis added).

## III. RECOMMENDATION:

Accordingly, for the above stated reasons IT IS RECOMMENDED that Defendant's Motion for Summary Judgment be DENIED and Plaintiff's Motion for Summary Judgment be GRANTED IN PART and the case remanded for further proceedings consistent with this Report and Recommendation.

The parties to this action may object to and seek review of this report and recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C.. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985);  *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: March 31, 2006                                    s/Steven D. Pepe
Ann Arbor, Michigan                               UNITED STATES MAGISTRATE JUDGE

13

Certificate of Service

      I hereby certify that a copy of this Report and Recommendation was served upon the attorneys and/or parties of record by electronic means or U. S. Mail on March 31, 2006.

                           s/William J. Barkholz____
                           Courtroom Deputy Clerk